## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**BRITTANY O, as Parent and Next Friend of L**                    **PLAINTIFF**

**V.**                              **CASE NO. 5:15-CV-5269**

**NEW BOSTON ENTERPRISES, INC.;**
**TEXARKANA BEHAVIORAL ASSOCIATES, L.C.,**
**d/b/a Vista Health TDT, d/b/a Vantage Point of**
**Northwest Arkansas; WINSTON "ALLEN"**
**MORRISON, JR., Individually and as Vista**
**Outpatient Counselor; VERONICA ODUM,**
**Individually and as Vista TDT Mental Health**
**ParaProfessional/TDT Program Manager;**
**STEPHANIE CROSS, Individually and as Vista**
**TDT Mental Health ParaProfessional; SHANNON**
**NOLAN, Individually and as Vista TDT Mental**
**Health ParaProfessional; CHARLES "CHUCK"**
**SHIELDS, Individually and as Vista TDT Therapist**          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Currently before the Court are the defendants' Motions to Dismiss and Briefs in Support (Docs. 28–41), the plaintiff's Response in Opposition (Doc. 42) and Brief in Support (Doc. 43), and the defendants' Reply (Doc. 44). For the reasons given below, the defendants' Motions at Docs. 28, 30, 32, 38, and 40 are **GRANTED**, the defendants' Motion at Doc. 34 is **MOOT**, and the defendants' Motion at Doc. 36 is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Plaintiff Brittany O brings this action as Parent and Next Friend ("Parent") of L ("Student"), her son. This case arises out of the same facts and circumstances that gave rise to another lawsuit in this Court, *Brittany O, as Parent and Next Friend of L v.*

*Bentonville School District et al.*, Case No. 5:15-cv-5020 ("*Brittany I*"), which is currently on appeal to the Eighth Circuit from this Court's award of summary judgment to the defendants in that case. Here, as in *Brittany I*, the alleged facts are that Student is a child who is disabled as defined in 20 U.S.C. § 1401(3), who was enrolled at Thomas Jefferson Elementary School in the Bentonville School District during the 2012–13 school year, and whose diagnoses include attention deficit hyperactivity disorder, disruptive behavior disorder, mood disorder, oppositional defiant disorder, and sensory disorder. Parent alleges that after the Bentonville School District identified Student as disabled, they transferred him to a therapeutic day treatment ("TDT") center that was privately owned and operated by the defendants New Boston Enterprises, Inc. ("New Boston) and Texarkana Behavioral Associates, L.C. ("TBA"), where Student was subjected to physical abuse and provided with an inadequate and unequal education relative to his non-disabled peers in the Bentonville School District.

Parent initiated *Brittany I* by filing a complaint in the United States District Court for the Eastern District of Arkansas on March 5, 2014, and then filing an amended complaint in that case on July 16 of the same year. Parent's amended complaint asserted claims against eleven separate defendants under 42 U.S.C. § 1983; the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq.*; the No Child Left Behind Act of 2001 ("NCLBA"), 20 U.S.C. § 6301 *et seq.*; the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; and state law. The defendants in *Brittany I* could be analytically grouped into three separate classes. One class consisted of the Bentonville School District and related defendants. A second class consisted of defendants associated with

2

the State of Arkansas. And the third class consisted of defendants associated with the above-referenced TDT center—specifically New Boston, TBA, Allen Morrison, and Veronica Odum.

On January 22, 2015, Judge Leon Holmes in the Eastern District of Arkansas entered an order in *Brittany I* that, *inter alia*, dismissed Parent's claims against New Boston and TBA without prejudice for failure to timely serve them with the complaint, and transferred the case to this Court. On March 12, 2015, this Court entered an order dismissing Parent's claims in *Brittany I* against Mr. Morrison without prejudice for failure to timely serve him with the complaint. On November 2, 2015, Parent filed the Complaint (Doc. 1) initiating the instant lawsuit ("*Brittany II*"), and a little over two weeks later she moved in *Brittany I* for the Court to consolidate *Brittany I* and *Brittany II*—a request which this Court denied a little less than one week afterwards. Then, on December 2, 2015, Parent filed a motion in *Brittany I*, asking this Court to dismiss Ms. Odum from that lawsuit *with* prejudice; on December 22, this Court granted that motion, and indeed dismissed Ms. Odum from *Brittany I with* prejudice. On March 15, 2016, this Court awarded summary judgment to the remaining defendants in *Brittany I*. As noted above, an appeal is currently pending before the Eighth Circuit from that judgment.

The defendants here in *Brittany II* are New Boston, TBA, Mr. Allen, and Ms. Odum—all of whom were defendants in *Brittany I*—as well as Stephanie Cross, Shannon Nolan, and Charles "Chuck" Shields. The latter three defendants are alleged to have been employees of TBA when the complained-of events occurred, but were not named as defendants in *Brittany I*. Parent's federal causes of action in *Brittany II* are alleged to arise under the same laws as those referenced in her *Brittany I* amended complaint,

3

except that Parent does not purport to bring any claims under the NCLBA in *Brittany II*. On April 18, 2016, the defendants filed seven different motions to dismiss various claims from Parent's Complaint in *Brittany II*, predicated on arguments that Parent failed to serve a couple of the defendants with a copy of the Complaint, that claims against a couple of other defendants are barred by *res judicata*, and that the Complaint fails to plead sufficient facts to state a claim.[1] These motions have all been fully briefed and are now ripe for decision.

## II. DISCUSSION

### A. Motion to Dismiss for Insufficient Service of Process

New Boston and Ms. Cross ask this Court to dismiss Parent's claims against them because Parent did not serve them with a copy of the Complaint within 120 days of its filing in this case.[2] Parent has indicated she "has no objection to dismissing Cross," (Doc. 43, p. 19), so the Court will **GRANT** the Motion as to Ms. Cross, who will be **DISMISSED WITHOUT PREJUDICE**.

Since New Boston's objection goes not to the form of process or content of the summons but rather to the lack of service itself, its Motion is properly brought under Rule

---

[1] All defendants other than New Boston and Ms. Cross filed Answers to Parent's Complaint before the instant Motions were filed. *See* Docs. 6, 19–22. It would therefore appear that arguments that the Complaint fails to state claims against defendants other than New Boston and Ms. Cross are properly construed as arguments for judgment on the pleadings under Rule 12(c), rather than for dismissal under Rule 12(b)(6). But in either event, the same legal standard applies because the distinction "is purely formal." *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

[2] Previously, Fed. R. Civ. P. 4(m) required a defendant to be served within 120 days after the complaint is filed. But on December 1, 2015, an amendment to that rule took effect, shortening the deadline for service to 90 days. Parent filed her Complaint in this case on November 2, 2015. It makes no difference which deadline applies here, since New Boston and Ms. Cross were not served within either timeframe.

12(b)(5) rather than Rule 12(b)(4).  5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1353 (3d ed. 2004).  "In a Rule 12(b)(5) motion, the party making the service has the burden of demonstrating validity when an objection to the service is made." *Roberts v. USCC Payroll Corp.*, 2009 WL 88563, at *1 (N.D. Iowa Jan 13, 2009) (internal quotation marks omitted).  If a defendant is not served within the time provided by the Federal Rules of Civil Procedure, then the Court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).

Parent and New Boston agree that Parent never served New Boston with a copy of the Complaint.  *See* Doc. 38, p. 1; Doc. 43, p. 19.  Parent argues that she has made reasonable, good-faith attempts at serving New Boston's registered agent, who she identifies as Susan Naples, and that therefore New Boston should not be dismissed.  In support of this argument she submits a Certificate of Due Diligence (Doc. 42-1), indicating that within a one-week span in mid-December 2015, a process server from Texas made seven separate attempts to effect in-person service at an address in Texarkana, Texas. On each attempt, the process server found a locked gate and presumably received no response to any attempts at gaining entry.  On three such occasions he left a card, each of which was gone upon his return.  *See id.*  The process server also indicates that he "located phone number . . . on internet" which was "not in service."  *Id.*

In addition to personal delivery to a registered agent, *see* Fed. R. Civ. P. 4(h)(1)(B), Rule 4 permits a corporation to be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is

located or where service is made," Fed. R. Civ. P. 4(e)(1), (h)(1)(A), which in this case would be the states of Arkansas and Texas, respectively. Both Arkansas and Texas allow service upon a Texas corporation's registered agent to be performed through certified mail. Ark. R. Civ. P. 4(d)(8)(A)(i), (e)(3); *see* Tex. R. Civ. P. 106(a)(2); Tex. Bus. Orgs. Code Ann. § 5.201. Furthermore, under Texas law, "[t]he secretary of state is an agent of an entity for purposes of services of process, notice, or demand on the entity if . . . the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity," Tex. Bus. Orgs. Code Ann. § 5.251, and may be served by delivering to the Secretary "duplicate copies of the process, notice, or demand" and paying any applicable fees, *id.* at § 5.252. Parent has not indicated whether she made any attempt to serve New Boston through certified mail or through service upon the Texas Secretary of State, or if not, then why she was unable to do so. Therefore, Parent has not shown good cause for her failure to serve New Boston. New Boston's Motion is **GRANTED,** and Parent's claims against New Boston are **DISMISSED WITHOUT PREJUDICE** under Rule 4(m).[3]

## B. Motion to Dismiss under *Res Judicata*

Ms. Odum asks this Court to dismiss all claims against her with prejudice, on the grounds that identical claims against her by the same party were voluntarily dismissed

---

[3] New Boston argues that it should be dismissed *with* prejudice because Parent's claims against it were previously dismissed without prejudice for insufficient service of process in *Brittany I. See* Doc. 39, pp. 1–2. The only authority that New Boston cites in support of this argument is Rule 41, which states in relevant part that "if *the plaintiff* previously dismissed any . . . action based on or including the same claim, a *notice of dismissal* operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B) (emphasis added). But neither of New Boston's dismissals in *Brittany I* or *II* was pursuant to a "notice of dismissal" by "the plaintiff." Rather, both dismissals were pursuant to motions filed by New Boston that were opposed by the plaintiff.

with prejudice in *Brittany I*. "When the parties to a previous lawsuit agree to dismiss a claim with prejudice, such a dismissal constitutes a final judgment on the merits for purposes of *res judicata.*" *Larken, Inc. v. Wray*, 189 F.3d 729, 732 (8th Cir. 1999) (internal quotation marks omitted); *see also TCBY Systems, Inc. v. EGB Associates, Inc.*, 2 F.3d 288, 290 (8th Cir. 1993) ("On appeal, EGB does not dispute that a dismissal with prejudice has the effect of a final adjudication on the merits." (internal alterations and quotation marks omitted)). "Under the doctrine of res judicata, also known as claim preclusion, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998).

Parent argues that her dismissal of Ms. Odum from *Brittany I* with prejudice should be treated as a dismissal without prejudice because she had already brought her claims against Ms. Odum in *Brittany II* before she dismissed the same claims against Ms. Odum in *Brittany I*. The Court is not aware of any authority that would support this approach, nor does such an approach comport with common sense or fairness. It is well-settled that when identical claims in simultaneous cases are ruled upon in one case, the first ruling is *res judicata* to the other case. *Cf. Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 544 (8th Cir. 2009) ("Once one court renders a ruling, the other court will be obliged to halt its proceedings and give res judicata effect to the decision." (quoting Erwin Chemerinsky, *Federal Jurisdiction* 876 (5th ed. 2007))). Besides, words should mean what they say. Parent explicitly asked this Court to dismiss Ms. Odum from *Brittany I* with prejudice, and that is exactly what this Court did. If Parent wanted Ms. Odum's

dismissal from *Brittany I* to be without prejudice, then Parent should have framed her request for relief that way.

A more interesting question is whether, or to what extent, the dismissal with prejudice of Parent's claims against Ms. Odum in *Brittany I* should have *res judicata* effect against TBA, Ms. Odum's employer. *Res judicata* applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner*, 153 F.3d at 673. The first, second, and fourth factors are all obviously met here with regard to TBA. As already noted above, the dismissal of Ms. Odum from *Brittany I* constitutes a final judgment on the merits. This Court had proper jurisdiction over *Brittany I* when it entered that order of dismissal. And Parent's *Brittany II* claims against Ms. Odum were also brought against Ms. Odum in *Brittany I*.[4]

The third factor, however, is more complicated. Clearly, TBA and Ms. Odum are not identical parties, and TBA was not a party to *Brittany I* at the time Ms. Odum was dismissed from that case.[5] The issue ultimately turns, then, on whether Ms. Odum and TBA are in privity with each other for purposes of Parent's claims against Ms. Odum. Accordingly, TBA only seeks *res judicata* dismissal of claims against it that are premised

---

[4] There is one possible exception to this, in that it might be arguable that Parent's claim for negligence against Ms. Odum in *Brittany II* was not brought against Ms. Odum in *Brittany I. Compare Brittany II* Doc. 1, ¶¶ 112–13, *with Brittany I* Doc. 10, ¶¶ 148–49. But ultimately this makes no difference because Parent's negligence claims as to all defendants in this case are being dismissed with prejudice for independent reasons. *See* Section II.C.5.a *infra*.

[5] TBA had previously been dismissed from *Brittany I* without prejudice because Parent had failed to properly serve TBA with the complaint and summons in that case.

on vicarious liability through Ms. Odum. (Doc. 44, p. 4). This is an appropriate form of relief for TBA to seek, so far as it goes. *See, e.g.*, *Headley v. Bacon*, 828 F.2d 1272, 1278 (8th Cir. 1987) (citing Restatement (Second) of Judgments § 51(1) for the proposition "that a judgment *against* an injured party which bars him from reasserting his or her claim against that defendant generally also extinguishes any claim he or she has against another person in a vicarious liability relationship with the first defendant" (emphasis in original)); *see also Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 255 U.S. 111, 127–28 (1912) (recognizing an exception to the requirement of mutuality for *res judicata* "where the liability of the defendant is altogether dependent upon the culpability of one exonerated in a prior suit, upon the same facts when sued by the same plaintiff"); 18A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4463 (2d ed. 2002) (explaining that "the most general version" of "the 'broad exception' to the requirement of mutuality" for *res judicata* is "that judgment in an action against either party to a vicarious liability relationship establishe[s] preclusion in favor of the other"). However, it appears from the Complaint that Parent's claims against TBA are not premised entirely on vicarious liability through Ms. Odum, and the Court does not have enough information at this time to separate the wheat from the chaff.

Therefore, TBA's and Ms. Odum's Motion to dismiss under *res judicata* will be **GRANTED IN PART AND DENIED IN PART**. Ms. Odum will be **DISMISSED WITH PREJUDICE**, but the preclusive effect of her dismissal from *Brittany I* on Parent's claims against TBA may be taken up again at a later stage in this case (for example, at summary judgment) when the Court has sufficient information before it to make the fact-intensive inquiry necessary to resolve the issue.

9

## C. Motions to Dismiss for Failure to State a Claim

Parent's Complaint asserts five claims for relief against the remaining defendants, under 42 U.S.C. § 1983, the IDEA, the Rehabilitation Act, the ADA, and state law. Each of these claims is argued by various remaining defendants to be insufficiently supported by factual allegations in the Complaint. After reciting the applicable legal standard, the Court will address each claim in turn below.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the Complaint's factual allegations as true, and construe them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces

does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

### 1.  42 U.S.C. § 1983

All remaining defendants argue that Parent's § 1983 claims against them must be dismissed because they are not state actors. "The ultimate issue in determining whether a person is subject to suit under § 1983" is whether that person's "alleged infringement of federal rights . . . can fairly be seen as state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). If the complained-of acts are not state actions, then § 1983 does not provide any means for relief. *Id.* Parent argues that two exceptions to the state-actor rule apply here, but neither avails.

First, Parent argues that the "public function" exception applies. Under this exception, a private actor may be held accountable under § 1983 for violations of federal rights that occur when they are performing a function that "has been traditionally the *exclusive* prerogative of the State." *Id.* at 842 (emphasis in original) (internal quotation marks omitted). This exception does not apply here. As the Supreme Court explicitly observed in *Rendell-Baker*, education of disabled children is not traditionally "the exclusive province of the State." *Id.* "That a private entity performs a function which serves the public does not make its acts state action." *Id.*

Second, Parent argues that the "entwinement" exception applies. Under this exception, a private actor may be held accountable under § 1983 for violations of federal rights when its "nominally private character . . . is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it."

11

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).  This exception also does not apply here, as Parent has not pointed to even a single public institution or public official that partakes in TBA's *composition* or *workings*—much less to any pervasive public entwinement.

Instead, Parent points to the facts that TBA receives federal funding, that TBA held itself out as being certified by the Arkansas Department of Education, and that the Bentonville School District paid the entire cost of Student's education at TBA.  But as to Parent's first and third points, the *Rendell-Baker* Court explicitly stated that "the school's receipt of public funds does not make the [complained-of actions] acts of the State," that "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts," and that "the relationship between the school and its teachers and counselors is not changed because the State pays the tuition of the students."  457 U.S. at 840–41.  And as to Parent's second point, the *Rendell-Baker* Court also explicitly stated that "state regulation, even if extensive and detailed, [does] not make a [private actor]'s actions state action" if the complained-of acts "were not compelled or even influenced by any state regulation."  *Id.* at 841.  Parent has not alleged any facts that would support a reasonable inference that any of the defendants' complained-of acts were "compelled or even influenced by any state regulation."  Accordingly, Parent's claims under 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE**.

## 2. IDEA

The section of Parent's Complaint setting forth the basis for her IDEA claim does not contain any specific demand for relief, *see* Doc. 1, ¶¶ 83–89, and the prayer for relief

appearing at the end of Parent's Complaint does not appear to make any specific requests for nonmonetary relief. *See id.* at pp. 37–38. The defendants have moved to dismiss Parent's IDEA claim, since "[c]ompensatory damages are not available through the IDEA." *J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist.*, 721 F.3d 588, 593 (8th Cir. 2013). In her Response, Parent states that "IDEA does not provide for monetary damages, nor is the Plaintiff seeking monetary damages under the IDEA." (Doc. 43, p. 11). Parent's Response does not explain what sort of nonmonetary relief Parent is seeking under the IDEA. More importantly, the Court is unable to glean from the Complaint what sort of nonmonetary relief Parent is seeking, or would even be entitled to, under the IDEA (or under any other authority, for that matter).[6]   Therefore, Parent's IDEA claim is **DISMISSED WITHOUT PREJUDICE**.

### 3. The Rehabilitation Act

The individual defendants have moved for this Court to dismiss Parent's Rehabilitation Act claims against them, on the grounds that Section 504 of that Act (under which Parent's claims are brought) applies only to parties who directly receive federal funds—not their employees. *See* Doc. 34, ¶ 2 (citing *Rose v. Cahee*, 727 F. Supp. 2d 728 (E.D. Wisc. 2010)). In her Response, Parent concedes that "an individual defendant may not be held personally liable under . . . the Rehabilitation Act" and clarifies that she

---

[6] Parent's Response also states without any further elaboration that "[p]ursuant to 20 U.S.C. § 1412(a)(10)(B)(ii), the Plaintiff/Parent has a right to pursue a due process hearing against both the private agency and the local education agency for the denial of a [free appropriate public education]. In this case, the Parent filed for due process against the Bentonville School District and the TBA Defendant, who was doing business under a variety of aliases including Vista Health and Vista TDT." (Doc. 43, pp. 12–13). It is not clear to the Court what relevance this has, since Parent does not appear to allege in the Complaint or in any other filing in this case that her right to a due process hearing was somehow violated.

is not suing any of the individually-named defendants under the Rehabilitation Act. (Doc. 43, p. 13). TBA, who is the sole remaining institutional defendant in this case, has not moved for dismissal of Parent's Rehabilitation Act claim against it. Accordingly, the Motion to Dismiss the Rehabilitation Act claims is **MOO**T.

### 4. ADA

All remaining defendants have moved for dismissal of Parent's ADA claims. As with the Rehabilitation Act claims, Parent has clarified in her Response that she is not pursuing any ADA claims against any individual defendants. *Id.* Therefore, the Court will consider only the argument for dismissal of these claims made by TBA, who is the only institutional defendant remaining in this case.

Parent brings her ADA claim against TBA under 42 U.S.C. § 12132, *see* Doc. 1, ¶ 104,[7] which prohibits public entities from discriminating against individuals on the basis of their disabilities. The ADA defines "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." 42 U.S.C. § 12131(1). TBA argues, correctly, that Parent's ADA claims against it should be dismissed because it is not a public entity. There are no allegations anywhere in the Complaint that TBA is a state or local government or instrumentality thereof. As

---

[7] This paragraph from Parent's Complaint quotes extensively from § 12132, but erroneously attributes the quotation to § 12131. This same paragraph in Parent's Complaint also omits, without indicating that any such omission occurred, the critical italicized word from its quotation of the following passage: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any *such* entity." 42 U.S.C. § 12132 (emphasis added).

14

discussed in Section II.C.1 *supra*, the facts as pleaded show nothing more than that TBA is a private entity that contracted with local governments. "A private contractor does not become a 'public entity' under Title II [of the ADA] merely by contracting with a governmental entity to provide governmental services." *Turner v. Mull*, 997 F. Supp. 2d 985, 997 (E.D. Mo. 2014) (quoting *Bounds v. Corizon, Inc.*, 2013 WL 943784, at \*3 (E.D. Mo. Mar. 11, 2013)). Accordingly, TBA's Motion to Dismiss ADA Claims is **GRANTED**, and Parent's ADA claims are **DISMISSED WITHOUT PREJUDICE**.

### 5. State Law

The "fifth claim for relief" in Parent's Complaint asserts three state-law causes of action: "fraud, intentional infliction of emotional distress, and negligence [sic] deprivation of a public education." (Doc. 1, ¶ 112). No defendants have moved to dismiss Parent's claim for intentional infliction of emotional distress. All defendants have moved to dismiss Parent's claim for negligent deprivation of a public education. All individual defendants have moved to dismiss Parent's claim for fraud.

### a. Negligence

The defendants argue that Parent's negligence claim should be dismissed because they had no duty to provide Student with a public education. "The law of negligence requires as essential elements that the Plaintiff show that a duty was owed and that the duty was breached." *Marlar v. Daniel*, 368 Ark. 505, 508 (2007). Parent does not attempt to argue otherwise in her Response, arguing instead that "the Defendants' use of physical restraint, seclusion, coercion, and intimidation were the proximate cause of the physical and psychological damage to the Plaintiff." (Doc. 43, p. 21).

15

Parent's argument misses the point, as it goes to causation (which has not been challenged) rather than duty (which has been challenged). The Complaint clearly premises its negligence claims on the notion that the defendants owed Student a duty, for purposes of common-law tort, to provide him a public education. *See* Doc. 1, ¶ 113 ("Defendants acted with deliberate indifference with respect to the . . . physical restraint, assault, and seclusion and [sic] to which L was subjected on a daily basis and that [sic] said actions deprived L of an opportunity for and/or benefit from an education."). This Court has been unable to independently find a single case anywhere in Arkansas recognizing such a duty, and Parent has not brought any supporting authority on that point to this Court's attention. Indeed, in *Key v. Coryell*, the Arkansas Court of Appeals held:

> Most out-of-state cases that have addressed this issue reject the existence of an "educational malpractice" cause of action. The cases dealing with this issue generally hold that a cause of action seeking damages for acts of negligence in the educational process is precluded by considerations of public policy, among them being the absence of a workable rule of care against which the defendant's conduct may be measured, the inherent uncertainty in determining the cause and nature of any damages, and the extreme burden that would be imposed on the resources of the school system and the judiciary. On the other hand, the Supreme Court of Iowa recognized such a cause of action in limited situations . . . . We find the majority view more persuasive and choose not to recognize a cause of action for educational malpractice in Arkansas.

> * * *

> We also hold that appellant did not state a cause of action for gross negligence, which is the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another. As with negligence, there must be a duty imposed by law for this claim to survive a motion to dismiss. Because appellant failed to establish such a duty, the court's dismissal of this claim is affirmed.

86 Ark. App. 334, 345–46 (2004) (internal citations omitted). Therefore, Parent's negligence claims are **DISMISSED WITH PREJUDICE**, as any amendment of these claims would be futile.

### b. Fraud

Turning to the individual defendants' motion to dismiss Parent's claims of fraud against them, the Court observes that the Federal Rules of Civil Procedure require a party alleging fraud to "state with particularity the circumstances constituting fraud" in its pleadings. *See* Fed. R. Civ. P. 9(b). The individual defendants argue that Parent's Complaint fails to meet this Rule 9(b) heightened pleading standard. Parent responds by pointing to twenty-two specific paragraphs in her Complaint that she believes satisfy this standard. *See* Doc. 43, p. 22 (citing Doc. 1, ¶¶ 17–22, 24–25, 28–30, 34–36, 41–44, 50, 53–55).

The Court has reviewed these paragraphs and so far as the Court can tell, not a single one of them alleges even a single "false representation of material fact," *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 375 (2007) (reciting elements of fraud), by even a single individual defendant. Indeed, only two of these paragraphs name any individual defendants at all. Paragraph 54 alleges that Mr. Morrison "new [sic] that L would be denied [sic] subjected to physical restraints and seclusions and denied regular and special education services and his right to an appropriate education."[8] Paragraph 55 alleges that Mr. Morrison's reason for securing Student's placement at TBA "was to assist [TBA] in obtaining L's Medicaid benefits and payments from the District."

---

[8] Paragraph 54 alleges the same of Ms. Odum, who is already being dismissed with prejudice from this case under *res judicata*. *See* Section II.B *supra*.

Neither of these allegations amounts to a false representation by Mr. Morrison to Parent, or even any representation at all to anyone at all, for that matter. Nor do any other paragraphs in the Complaint contain any allegations that Mr. Morrison made any representations, false or otherwise, to anyone. The only other facts alleged about Mr. Morrison anywhere in the Complaint are that he was a Licensed Professional Counselor employed by New Boston who provided outpatient counseling services to Student, and who communicated in some unspecified manner with Student's teacher at the Bentonville School District about Student's classroom behavior. *See* Doc. 1, ¶¶ 7, 12–13. This is insufficient to satisfy Rule 9(b)'s heightened pleading standard for fraud claims. Therefore, Parent's fraud claims against the individual defendants will be **DISMISSED WITHOUT PREJUDICE**.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that:

- Defendants Texarkana Behavioral Associates, L.C.'s, Winston "Allen" Morrison, Jr.'s, Veronica Odum's, Shannon Nolan's, and Charles "Chuck" Shields's Motion to Dismiss 1983 Claims (Doc. 28) is **GRANTED**, and Plaintiff's 1983 claims are **DISMISSED WITHOUT PREJUDICE**;

- Defendants Texarkana Behavioral Associates, L.C.'s, Winston "Allen" Morrison, Jr.'s, Veronica Odum's, Shannon Nolan's, and Charles "Chuck" Shields's Motion to Dismiss IDEA Claims (Doc. 30) is **GRANTED**, and Plaintiff's IDEA claims are **DISMISSED WITHOUT PREJUDICE**;

- Defendants Texarkana Behavioral Associates, L.C.'s, Winston "Allen" Morrison, Jr.'s, Veronica Odum's, Shannon Nolan's, and Charles "Chuck" Shields's Motion

18

to Dismiss ADA Claims (Doc. 32) is **GRANTED**, and Plaintiff's ADA claims are **DISMISSED WITHOUT PREJUDICE**;

- Defendants Winston "Allen" Morrison, Jr.'s, Veronica Odum's, Shannon Nolan's, and Charles "Chuck" Shields's Motion to Dismiss Section 504 Claims (Doc. 34) is **MOOT**;

- Defendants Veronica Odum's and Texarkana Behavioral Associates, L.C.'s Motion to Dismiss Complaint (Doc. 36) is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff's claims against Ms. Odum are **DISMISSED WITH PREJUDICE**;

- Defendants New Boston Enterprises, Inc.'s and Stephanie Cross's Motion to Dismiss (Doc. 38) is **GRANTED**, and Plaintiff's claims against New Boston and Ms. Cross are **DISMISSED WITHOUT PREJUDICE;** and

- Defendants Texarkana Behavioral Associates, L.C.'s, Winston "Allen" Morrison, Jr.'s, Veronica Odum's, Shannon Nolan's, and Charles "Chuck" Shields's Motion to Dismiss State Law Claims (Doc. 40) is **GRANTED**, in that Plaintiff's negligence claims are **DISMISSED WITH PREJUDICE** as to all defendants, and Plaintiff's fraud claims are **DISMISSED WITHOUT PREJUDICE** as to all defendants except Texarkana Behavioral Associates.

As a consequence, the only remaining defendants and claims against them in this case at this time are:

- Texarkana Behavioral Associates, L.C.—section 504 of the Rehabilitation Act, fraud, and intentional infliction of emotional distress;

- Winston "Allen" Morrison, Jr.—intentional infliction of emotional distress;

- Shannon Nolan— intentional infliction of emotional distress; and

- Charles "Chuck" Shields— intentional infliction of emotional distress.

**IT IS SO ORDERED** on this ___15th___ day of July, 2016.

_____

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE